# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| JOHN P. ANDERSON AND EARLLEN ANDERSON | *   CIVIL ACTION NO. 04 - 1823 |
| | *   JUDGE JAMES |
| VERSUS | *   MAGISTRATE JUDGE HAYES |
| CITY OF BASTROP, CLARENCE HAWKINS AND JAMES H. BOYD | |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are a Motion to Dismiss for lack of subject-matter jurisdiction, and, in the alternative, a Motion for Summary Judgment filed by the defendants pursuant to F.R.C.P. Rule 12(b)(1) and F.R.C.P. Rule 56. (Document No. 13). For reasons stated below, it is recommended that the motion to dismiss be **GRANTED and this matter dismissed without prejudice** for lack of subject matter jurisdiction.

On September 2, 2004, plaintiffs John P. Anderson and Earllen Anderson filed a complaint against the City of Bastrop; Clarence Hawkins, the mayor of Bastrop; and James H. Boyd, the fire chief of Bastrop; alleging race and age discrimination in violation of their civil rights. Additionally, plaintiffs allege that their property was taken without due process, and that La. R.S. 33:4766 is either an unconstitutional statute or was unconstitutionally applied to them.

Defendants' Motion to Dismiss is based on the argument that this court lacks subject-matter jurisdiction pursuant to the Tax Injunction Act because the case involves a state tax issue. Defendants' Motion for Summary Judgment argues that the plaintiffs have no evidence to support their claims of constitutional violations. Because subject-matter jurisdiction is a threshold issue, it must be addressed first.

The Tax Injunction Act states as follows: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state." 28 USC § 1341. The courts have consistently held that this act is a "broad jurisdictional impediment to federal court interference with the administration of state tax systems." *Home Builders Ass'n. of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998). One of the purposes behind this policy is to avoid federal judicial interference and delay in collection of funds that are necessary for states to finance their essential functions. *Tramel v Schrader*, 505 F.2d 1310, 1316 (5th Cir. 1975). The court in *Tramel* further declared that the use of a narrow definition of "tax" did not further any of the purposes of the statute. *Tramel* at 1316

Whether a charge is a "fee" for regulatory or punitive purposes or a revenue raising state "tax" for the purpose of application of the Tax Injunction Act is a question of federal law. *Neinast v. State of Texas*, 217 F.3d 275 (5th Cir. 2000). For purposes of the Tax Injunction Act, the courts look to three factors to determine if a charge is "tax": (1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the money collected. *San Juan Cellular v. Public Service Commission*, 967 F.2d 683 (1st Cir. 1992). *San Juan Cellular* noted that a classic "tax" is imposed by a legislature upon many or all citizens. It raises money that is contributed to a general fund and is spent for the benefit of the entire community. The classic "fee" is imposed by an agency upon those subject to its regulation. It serves regulatory purposes by discouraging certain conduct by making it more expensive or by using the money collected to defray the regulation-related expenses. *San Juan Cellular* at 685.

The Fifth Circuit has acknowledged that distinguishing a "tax" from a "fee" can be a difficult task. *Home Builders Ass'n. of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998). In *Home Builders*, the court held that the city's impact fee ordinance, requiring builders and developers in new residential areas to pay a $700 fee for each planned residential dwelling, was a "tax" for the purposes of the Tax Injunction Act.

Likewise, in *Alnoa G. Corp. v. City of Houston, Tex.*, 563 F.2d 769 (5th Cir. 1977), the court held that the term "tax" as used in 28 U.S.C. § 1341 included a special assessment for street paving. The *Alnoa* case involved street paving assessments which the defendant city levied against certain properties owned by the plaintiff within the City of Houston. The plaintiff contended that the amount of the assessments exceeded the amount by which its properties would be enhanced by the street improvements, that the assessments were arbitrary and capricious, depriving it of due process, and that certain aspects of its hearing before the City Council also deprived it of due process.

The most recent Fifth Circuit opinion on this matter also held that the ordinance in question was a "tax." *Henderson v. Stalder*, 407 F.3d 351, 358-359 (5th Cir. 2005) held as follows:

> Given the TIA's broad purpose to prevent federal courts from interfering with challenges to state and local revenue-raising measures and the correspondingly narrow and focused exception that has been carved out for regulatory fees that defray the costs of a particular regulatory regime, we are unwilling to mischaracterize the Louisiana legislature's appropriations measures as "fees" in order to achieve federal jurisdiction.

The Fifth Circuit in *Henderson* also noted as follows:

> This court has, on the other hand, routinely characterized local improvement assessments imposed on a selected class of business as taxes, not fees, in line with the understanding that a "tax" "embraces any extraction of property from a private person by a sovereign for its use." *Tramel,* 505 F.2d at 1315. *Home Builders*

3

reaffirmed *357 this characterization of an impact fee ordinance, which was passed to enhance the provision of municipal services in a rapidly growing city, deeming it a tax in light of the broad public purpose to be served by the funds collected under it. 143 F.3d at 1011-12.

*Id.* at 356 -357

The charge at issue in *Henderson* was one for specialty prestige license plates. The court held that the charge was in fact a "tax" despite the fact that it was voluntarily paid by a small number of individuals desiring the specialty plates. It was authorized by the state legislature, but the proceeds went to various legislatively approved charities, not the general fund. In coming to this finding, the court focused mainly on the fact that the additional charges did not regulate anything, and did nothing to defray the costs of the program itself. The court stated that the charge had the dominant purpose of raising revenue. *Henderson* at 356-359.

*Neinast v. State of Texas*, 217 F.3d 275 (5th Cir. 2000), held that the charge imposed for handicapped parking placards was a "fee" not a "tax" for the purposes of the Tax Injunction Act. Even though the charge was imposed by the legislature, it was only imposed on those persons desiring a placard. The proceeds went into the general highway fund but were supposed to help defray the costs of the program.

The Sixth Circuit, in *Hedgepeth v. Tennessee*, 215 F.3d 608 (6th Cir. 2000), held that the Tax Injunction Act barred federal jurisdiction partly because the fee for disabled parking permits went into the state's highway fund, general fund, police pay supplement fund, and trooper safety fund, making it a revenue raising measure and thus a "tax."

In *Wright v. McClain,* 835 F.2d 143 (6th Cir. 1987), the Sixth Circuit, held that state laws requiring parolees to make monthly payments to a supervision fund and to a victim's compensation fund were taxes for purposes of the Tax Injunction Act, noting that the purposes of the contributions were to defray the cost to the general public of monitoring and supervising the

behavior of convicted offenders and to compensate, in some measure, the victims of criminal misconduct. The *McClain* court held that these purposes related directly to the general welfare of the citizens of the state, and the assessments to fund them were no less general revenue-raising levies simply because they were dedicated to a particular aspect of the commonwealth.

When the three part inquiry under *San Juan Cellular* reveals that a charge is classic of neither a "tax" nor a "fee," but instead falls somewhere in the middle, the most important consideration becomes the purpose behind the statute or regulation imposing the charge. *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130 (4th Cir. 2000). In *Valero*, the Fourth Circuit held that the charge imposed on persons disposing waste into the landfills was a "tax." The charge in *Valero* had been imposed by the West Virginia legislature and applied to all citizens and businesses who paid a collection service fee to have their waste picked up; thus, it was spread to a wide proportion of the population. The money was placed in a special fund used to provide funding to landfills that did not meet certain environmental criteria set out by the EPA and that could not afford either upgrade or closure. The court reasoned that despite the segregated fund, which is characteristic of a fee, the underlying purpose was to prevent groundwater contamination which created a potential health hazard for the general population. Since the underlying purpose was to benefit the entire population, the charge was held to be a "tax." *Valero*, at 134-135.

In the present case, the charges in question were assessments against the plaintiffs' property for maintenance work done by the city which the plaintiffs failed to perform themselves. The assessments were made pursuant to the ordinances of the Bastrop City Code, and La. R. S.33:4766. As such, the undersigned finds that the charges made against the plaintiff's property were more in the nature of the special assessments addressed in *Alnoa G. Corp. v. City of*

5

*Houston, Tex.*, 563 F.2d 769 (5th Cir. 1977), and the landfill fees imposed in *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130 (4th Cir. 2000), both of which were held to be "taxes" for purposes of the Tax Injunction Act.

Under the first factor in the *San Juan Cellular* analysis, both bases for the assessment are legislative acts, one from the governing body of the municipality and the other from the state legislature. The purpose of the city ordinances is to enhance the safety and welfare of the citizens of Bastrop by requiring property owners to keep their property well-maintained and repaired. The purpose of La. R.S. 33:4766 is a revenue-raising one, allowing a municipality to re-coup the costs of maintaining such property when a property owner fails to do so.[1]

The entire population benefits from the proper maintenance of property. Such maintenance assists in mosquito abatement, crime prevention, and enhancing the value of the surrounding property as well as the property in question. In addition, replacing the public funds spent to clean up private property provides resources which can be used for other public purposes. Thus, the primary purpose of the assessments is to raise revenue benefitting the community as a whole, again indicating that the charges in question should be labeled a "tax" for purposes of the Tax Injunction Act.

While the charges are not assessed to the general population, but only to those people who fail to maintain their property in a safe and sanitary fashion, and fail to remedy any such problems after notice, thus violating the ordinance, neither were those in the *Alnoa*, *Valero, or Henderson* cases. Additionally, while La. R.S. 33:4766 falls under the Title governing the

---

[1] Neither party briefed, nor did the portions of the ordinance in question provided show, where the money collected is deposited and how it is actually used. Since it is assessed as a property tax, and neither party presented evidence to suggest that the funds raised are placed anywhere but in the general fund, the undersigned must assume that the funds are deposited into the general fund and not into some separate segregated fund.

6

exercise of police power by municipalities and parishes and is not part of the revenue and taxation provisions found in La. R.S. Title 47, the state's own labels placed on the nature of an assessment are not determinative.

Given the broad interpretation of the Tax Injunction Act in the more recent decisions by the Fifth Circuit in *Henderson* and the Fourth Circuit in *Valero*, and the ultimate purpose of the ordinance, which is to raise revenue for the benefit of all of the citizens of Bastrop, the undersigned finds that the charge carries more characteristics of a tax than a fee or fine, and it is therefore recommended that this court hold that the charges are a "tax" for the purposes of the Tax Injunction Act and that the defendant's motion to dismiss for lack of subject-matter jurisdiction be **GRANTED**. In the absence of subject-matter jurisdiction, this court may not address the motion for summary judgment on its merits.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 2nd day of August, 2005.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE